IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN JOHNSON, | : | |
| Petitioner, | : | Civil Action |
| | : | |
| v. | : | NO. 13-3197 |
| | : | |
| JOHN W. KERESTES, et al., | : | |
| Respondents. | | |

**Respondents' Supplemental Brief**

Pursuant to this Court's order of September 23, 2022, Respondents respectfully submit this brief to supplement the Compromise and Settlement Agreement and address the issues raised by the Court at the September 22, 2022 hearing.

**I.  This Court Has the Authority to Dispose of the Habeas Petition as Law and Justice Require by Issuing a Conditional Writ of Habeas Corpus.**

The federal habeas statute provides that the Court "shall dispose" of a petition for a writ of habeas corpus "as law and justice require." 28 U.S.C. § 2243. The federal courts thus have "broad discretion" in fashioning habeas corpus relief. *Hilton v. Braunskill*, 481 U.S 770, 775 (1987). While the courts typically grant a conditional writ ordering release of a petitioner unless the State decides to retry them, *see Herrera v. Collins*, 506 U.S. 390, 403 (1993), the courts are not limited to such relief and "in exceptional circumstances" may bar the State from retrying a petitioner altogether, s*ee, e.g., Capps v. Sullivan*, 13 F.3d 350, 352-53 (10th Cir. 1993) (recognizing the district court "had the power to grant any form of habeas relief, including permanent discharge"); *Gall v. Parker*, 231 F.3d 265, 335-36 (6th Cir. 2000) (granting habeas relief on condition that the state provide petitioner an involuntary hospitalization proceeding).

1

1. **The Proposed Habeas Relief Is Appropriate and Does Not Intrude on the State Court's Province.**

At the hearing on September 22, 2022, this Court raised concerns about the propriety of the federal court directing the state court to accept a plea agreement. To clarify, in this case, the Parties are not asking that the Court direct the state court to accept the proposed plea agreement. Rather, the Parties have asked the Court to issue a conditional writ ordering that the Commonwealth act within 120 days to retry or release the Petitioner. *See* ECF No. 77-1. During that period, the Parties, having essentially returned to a pretrial status, would proceed with a negotiated plea pursuant to state law, where the Commonwealth would make a recommended sentence to reduced charges, and the defendant would enter a plea of no contest. However, the Court of Common Pleas would retain its authority to decide whether to accept the plea and enter the negotiated sentence.[1] If the Petitioner does not enter a no contest plea, the Parties could return to this Court, as agreed upon by both Parties in the Stipulation and Proposed Order (ECF No. 77-1), and reactivate the petition. If both Parties follow through with their agreement, the Parties will report the same to this Court, so that this matter may be closed and final.

**II.  This Court Has Authority to Grant Habeas Relief**.

As outlined in the Compromise and Settlement Agreement, Respondents believe a

---

[1] Similar agreements have been approved by other courts in this District. *See, e.g., Bentley v. Lamas*, No. 13-6045, ECF No. 80; *Wright v. Lamas, et al.*, No. 13-6420, ECF No. 89-3. In both cases, like here, the parties reached a settlement whereby the petitioner would plead guilty to third-degree murder. Federal courts have the authority to accept habeas settlements and bind the state courts to their order. *E.g.*, *Washington v. Sobina*, 471 F. Supp. 2d 511, 518 (E.D. Pa. 2007) (noting and encouraging settlement negotiations in habeas corpus actions); *Commonwealth v. Speight*, 249 A.3d 1075, 1085-86, 188 (Pa. 2021) (J. Todd concurring) ("The federal district court, under 28 U.S.C. § 2254 granted Appellant's petition for a writ of habeas corpus . . . and the trial court was bound to respect that determination . . . .").

sufficient basis exists for the issuance of a conditional writ of habeas corpus in this matter.[2] The Respondents have acknowledged that Petitioner's constitutional claims are "plausible" and "arguable," and that the accuracy and credibility of the eyewitness identifications at trial "appear[] in doubt," but that that claim is "not without issue." ECF No. 77. While the Parties' proposed agreement to a resolution in this case, and the Respondents' attendant concession, is entitled to weight, the Court retains its independent judgment as to whether such relief is appropriate.

The federal habeas statute authorizes a district court to "entertain" a state prisoner's habeas petition when that individual is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, the Petitioner alleges, among other claims, that the Commonwealth violated his due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963) by withholding exculpatory evidence.[3] To establish a due process violation under *Brady*, a defendant must show: (1) that the information was suppressed, inadvertently or willfully; (2) that it was favorable to the defense; and (3) that it was material. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284-85 (3d Cir. 2016) (en banc).[4]

One particular *Brady* claim pertains to Angelo Smith. During the initial investigation of this crime, Smith was the first witness to identify Petitioner after reviewing a "book of photos" at police headquarters, stating that Petitioner "looks like [the man with the pistol], I am not positive."

---

[2] As representatives of the Commonwealth, Respondents' "interest [ ] in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Stickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[3] Because the *Brady* claims discussed here have not been addressed by the state court on the merits, the deferential standards of 28 U.S.C. § 2254(d) are inapplicable and Petitioner is entitled to de novo review of these claims. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (de novo review where state courts did not reach merits of claim).

[4] The materiality of suppressed, favorable evidence is to be considered collectively, not item by item. *Dennis,* 834 F.3d at 312.

ECF No. 32-2 at 10. In 2014, when interviewed by defense investigators, Smith attested (in two separate affidavits) that he appeared at what he believed was the trial, but was told he was not needed to testify after informing police or the "DA" he did not recognize Petitioner. ECF No. 32-2 at 29-30, 35. During state post-conviction proceedings in 2016, the Commonwealth had Smith re-interviewed by Philadelphia Police Department homicide detectives concerning the information in these affidavits. While Smith disavowed parts of his affidavits, he reaffirmed his previous statement that he didn't testify at trial because he "told the cops I didn't recognize the guy in the courtroom." *See* Ex. A. A witness fee certificate found in the prosecution file shows approval of a $10 payment to Smith on February 23, 1988 for two days of attendance as a witness in this case, lending support to Petitioner's claim that Smith did appear at trial. *See* Ex. B.[5]

In another *Brady* claim, Petitioner alleges that the Commonwealth failed to disclose an exculpatory arrest photo of him, showing him with a moustache approximately 36 hours after the offense. In contrast, two of the four eyewitnesses (Angelo Smith and James Smith) told police that the perpetrator with the pistol had no moustache or facial hair. *See* ECF Nos. 32-2 at 6, 8-9. Respondents' review of this case did not uncover information that the arrest photo was passed as discovery. Discovery letters delineating items the Commonwealth provided to the defense do not list the arrest photo. *See* Ex. C. Respondents have not located any other document memorializing the arrest photo being passed as discovery, or otherwise disclosed to the defense prior to trial.

---

[5] The fee certificate does not specify the days on which Smith appeared at court. On the second-to-last day of the Commonwealth's case-in-chief, the Commonwealth requested a bench warrant because Angelo Smith had failed to appear, despite communicating with the prosecutor and police. At that hearing, the court noted that Angelo Smith had appeared at the pretrial motion to suppress hearing. *See* N.T. 2/1/1988 at 588-89. While there is no transcript of this hearing, the court's docket indicates that on January 27, 1988 the motion was denied, the defendant pled not guilty, and testimony began. While it is unclear exactly when the hearing occurred, it is unlikely to have taken two days.

The question of materiality is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial." *Kyles v. Whitley*, 514 U.S. 419, 425 (1995). As discussed in the Compromise and Settlement Agreement, Petitioner's conviction rested on the testimony of three eyewitnesses—all three of whom have since recanted. In closing, the Commonwealth argued that numerous inconsistences among the Commonwealth witnesses' account of the crime were insignificant, because each witness had "independently" identified the defendant. *See* N.T. 2/3/1998 at 833-37. If the initial witness who identified the Petitioner by looking at a "book of photos" appeared in court and told the Commonwealth that the Petitioner was not the person he saw commit the crime, and this was not disclosed to the defense, this information would form the basis to undermine confidence in the jury's verdict. Furthermore, at trial, in a case entirely dependent on eyewitness identifications, the defense did not use Petitioner's arrest photo to show that he had a mustache shortly after the crime. This raises the question about whether this was caused by defense counsel's deficient performance, which was sufficiently prejudicial to constitute a constitutional violation,[6] or was suppressed and sufficiently material to undermine confidence in the verdict.

For these reasons, Respondents believe that the proposed agreement and a conditional writ of habeas corpus would be an appropriate resolution to this case. However, Respondents recognize that this Court retains its independent judgment to examine the record of this case, the evidence proffered by Petitioner, and the Parties' pleadings to determine whether a sufficient basis exists for granting a conditional writ.

---

[6] While the Petitioner has not yet pled an ineffective assistance of counsel claim related to trial counsel's failure to investigate and utilize the arrest photo, the Parties contemplated such a claim in the Compromise and Settlement Agreement. ECF No. 77 at § 37.

In the event this Court does not grant a conditional writ, Respondents believe an evidentiary hearing would be appropriate. Given this Court's questions concerning the possible need to resolve credibility issues, a hearing would provide the Court with the information to do so.[7] As noted in the Compromise and Settlement Agreement, Respondents have waived all non-jurisdictional bars to relief, including exhaustion, in this habeas proceeding.

Respectfully submitted,

*/s/Banafsheh Amirzadeh*
Banafsheh Amirzadeh
Assistant District Attorney, Conviction Integrity Unit
Michael Garmisa
Supervisor, Conviction Integrity Unit
District Attorney's Office
3 S. Penn Square
Philadelphia, PA 19107
(215) 686-8000

*Counsel for Respondents*

Signed: October 11, 2022

---

[7] With respect to Petitioner's claims about Opal Nickson, one of the Commonwealth's key eyewitnesses, an evidentiary hearing may not involve more than considering the available records. Nickson is presumed deceased, based on information provided to the CIU by her sister in 2020. However, Nickson was deposed on the issues related to this petition in a contested proceeding in 2019. During that deposition, she testified to having memory problems, and did not recall providing an affidavit to the defense in 2014 or a statement to police detectives in 2016. However, she testified that she could not identify Petitioner as the perpetrator and that the perpetrator had darker skin.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN JOHNSON,** | : | |
| Petitioner, | : | **Civil Action** |
| | : | |
| v. | : | NO. 13-3197 |
| | : | |
| **JOHN W. KERESTES, et al.,** | : | |
| Respondents. | | |

## CERTIFICATE OF SERVICE

I, Banafsheh Amirzadeh, certify that on October 11, 2022, a copy of this Supplemental Brief was served via the Court's electronic case filing system on:

*Claudia B. Flores*
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106

*Nilam A. Sanghvi*
The Pennsylvania Innocence Project
1515 Market Street, Suite 300
Philadelphia, PA 19102

*David Rudovsky*
Kairys, Rudovsky, Messing, Feinberg & Lin LLP
718 Arch Street, Suite 501S
Philadelphia, PA 19106

 

*/s/ Banafsheh Amirzadeh*_____
Asst. District Attorney, Conviction Integrity Unit
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107
(215) 686-8000